IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOANN CROWLEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-15-00607 |
| BWW LAW GROUP, LLC, | * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*

| | |
|---|---|
| BWW LAW GROUP, LLC | * |
| Third-Party Plaintiff, | * |
| v. | * |
| THE HERALD-MAIL COMPANY | * |
| Third-Party Defendant. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

This action arises from the attempted foreclosure of Plaintiff Joann Crowley's ("Crowley" or "Plaintiff") property by Defendant BWW Law Group, LLC ("BWW"). After the Circuit Court for Washington County, Maryland, set aside the foreclosure, Plaintiff filed the subject action against Defendants BWW and JPMorgan Chase Bank, National Association ("JPMorgan"), asserting violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*; the Maryland Consumer Protection Act, Md. Code Ann., Com. Law. §§ 13-101, *et seq.*; the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law.

§§ 14-201, *et seq.*; and the Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. §§ 7-401, *et seq.* On November 9, 2015, this Court dismissed all claims against JPMorgan. Order, ECF No. 20. By the same Order, this Court dismissed all state law claims against BWW, but held that Crowley had plausibly stated a claim for relief against BWW under the Fair Debt Collection Practices Act (Count II). *Id.*

BWW subsequently filed a timely six count Third-Party Complaint (ECF No. 25) seeking to implead The Herald-Mail Company ("Herald-Mail") pursuant to Rule 14(a) of the Federal Rules of Civil Procedure. Specifically, BWW claims that any liability to Crowley stems from the Herald-Mail's alleged failure to publish the requisite legal notices of foreclosure in accordance with the contract between BWW and the Herald-Mail.

Presently pending is Third-Party Defendant Herald-Mail's Motion to Dismiss the Third-Party Complaint (ECF No. 29). Having reviewed the parties' submissions, this Court finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons that follow, Third-Party Defendant Herald-Mail's Motion to Dismiss the Third-Party Complaint (ECF No. 29) is GRANTED IN PART and DENIED IN PART. In sum, Counts I, II, III, and VI are not cognizable under Rule 14(a) of the Federal Rules of Civil Procedure. Counts IV and V, however, are cognizable under Rule 14(a) and sufficiently pled. Accordingly, the Motion to Dismiss the Third-Party Complaint is GRANTED as to Counts I, II, III, and VI, and DENIED as to Counts IV and V.

## BACKGROUND

This Court accepts as true the facts alleged in the Third-Party Complaint. *See Aziz v. Alcolac, Inc.,* 658 F.3d 388, 390 (4th Cir. 2011). The subject Third-Party Complaint asserts

two primary failures by the Herald-Mail with respect to the underlying foreclosure of Plaintiff Joann Crowley's property. The first is the Herald-Mail's misstatements of publication dates, representations on which BWW allegedly relied in certifying its compliance with the notice requirements. Third-Party Compl. ¶ 4, ECF No. 25. The second is the Herald-Mail's failure to publish according to the contracted dates. *Id.* Due to these actions, BWW claims that the Herald-Mail is liable for some or all of any liability BWW may have to Crowley. The background facts of this action have been fully set forth in this Court's Memorandum Opinion of November 9, 2015 (ECF No. 19), thus only a summary is included herein.

### A. Plaintiff Crowley's Complaint against BWW and JPMorgan

In 2008, Plaintiff Crowley entered into a deed of trust and obtained a mortgage for the property located at 19829 Reidtown Road, Hagerstown, Maryland (the "Property"). Amended Compl. ¶¶ 11-12, ECF No. 17. JPMorgan acted as the servicer of the mortgage note. *Id.* As of May 2, 2009, Crowley had defaulted on her mortgage, and JPMorgan placed the note in default status. Compl. Ex. C, ECF No. 1-4. On November 15, 2013, attorneys with BWW Law Group, as Substitute Trustees, initiated foreclosure proceedings on the Property in the Circuit Court for Washington County, Maryland. Amended Compl. ¶ 14. BWW sold the Property at auction on March 12, 2014. *Id.* ¶ 15. Thereafter, BWW filed a Certificate of Publication of Sale for the state foreclosure proceeding on April 4, 2014.[1] *Id.* ¶ 16; Compl. Ex. F, ECF No. 1-7. The Certificate, published by the Herald-Mail Company in

---

[1] Under Maryland Rules, a trustee proposing a public sale of a property must give notice by advertisement of the time, place, and terms of the sale in a newspaper of general circulation in each county where any portion of the property is located. Md. R. 14-303(b). The notice must be published at least once a week for three successive weeks. *Id.* at 14-303(b)(1).

its daily newspaper, certified that notice of the sale of the Property was published in that newspaper on February 25, 2014, March 4, 2014, and March 11, 2014.   Compl. Ex. F. However, the Certificate was dated February 25, 2014, a date prior to the publication dates it purported to certify.   *Id.*   Upon further investigation, Crowley discovered that, contrary to the affirmations made in the Certificate of Publication of Sale, the Herald-Mail did not publish notice of the sale of the Property on March 11, 2014. Amended Compl. ¶ 21; Compl. Ex. I, ECF No. 1-10.

After realizing this error, Crowley objected to the foreclosure sale on May 14, 2014. Amended Compl. ¶ 18. BWW and JPMorgan then submitted an amended Certificate of Publication of Sale, which listed the same dates of publication as the original Certificate.[2]  *Id.* ¶ 19; Compl. Ex. H, ECF No. 1-9.   Ultimately, the Circuit Court for Washington County found that JPMorgan did not meet the presale publication requirements and set aside the sale of the Property.[3] Am. Compl. ¶ 22; Compl. Ex. J, ECF No. 1-11.

On March 3, 2015, Crowley filed her initial Complaint with this Court (ECF No. 1), alleging that BWW and JPMorgan violated federal and state law by submitting false and misleading Certificates of Publication of Sale (or "affidavits"). After BWW and JPMorgan filed their respective Motions to Dismiss (ECF Nos. 8 & 9), this Court dismissed all claims against JPMorgan, but allowed the Fair Debt Collection Practices Act claim (Count II) to proceed against BWW. *See generally* Mem. Op., ECF No. 19.

---

[2] The Certificate itself was not dated. Am. Compl. ¶ 19; Compl. Ex. I.
[3] At a hearing in the Circuit Court for Washington County on this matter, Crowley introduced the entire March 11, 2014 issue of the Herald-Mail in support of her assertion that BWW had submitted false and misleading affidavits claiming it had complied with all presale publication requirements when in fact it had not. Compl. Ex. I.

### B. BWW's Third-Party Complaint against the Herald-Mail

BWW subsequently filed a timely Third-Party Complaint (ECF No. 25) seeking to implead The Herald-Mail Company ("Herald-Mail") pursuant to Rule 14(a) of the Federal Rules of Civil Procedure. Specifically, BWW claims that any liability to Crowley stems from the Herald-Mail's misrepresentations and related failure to publish the requisite legal notices of foreclosure in accordance with the contract between BWW and the Herald-Mail. BWW allegedly relied on the Herald Mail's Certification of Publication and corresponding statements to ensure BWW's compliance with Md. R. 14-210(a).[4] *Id.* ¶¶ 3, 5, 7.

In November 2013, BWW, as Substitute Trustee, initiated the foreclosure proceeding on the Property (the "Foreclosure Action"). *Id.* ¶ 5. On February 12, 2014, BWW, acting through its agent Alex Cooper Auctioneers, Inc. ("Cooper Auctioneers"), placed an order with the Herald-Mail to run three legal notices advertising the Trustees' sale of the Property on March 12, 2014. *Id.* ¶ 6. The notices were to appear in the February 25, 2014, March 4, 2014, and March 11, 2014 editions of the Herald-Mail's newspaper. *Id.* The Herald-Mail confirmed the order for the legal notices and provided the ad copy and invoice to BWW, again through its agent Cooper Auctioneers. *Id.* ¶ 8. Along with the confirmation and invoice, the Herald-Mail charged BWW's credit card in the amount of $1,081.71 for the legal notices. *Id.* ¶ 9.

---

[4] Md. R. 14-210(a) requires that "Before selling property in an action to foreclose a lien, the individual authorized to make the sale shall publish notice of the time, place, and terms of the sale in a newspaper of general circulation in the county in which the action is pending. Notice of the sale of an interest in real property shall be published at least once a week for three successive weeks, the first publication to be not less than 15 days before the sale and the last publication to be not more than one week before the sale. Notice of the sale of personal property shall be published not less than five days nor more than 12 days before the sale."

On March 15, 2014, BWW received a Certification of Publication ("CoP 1") from the Herald-Mail, which certified that the legal notices were published on the specified dates: February 25, 2014, March 4, 2014, and March 11, 2014.[5] *Id.* ¶ 10. Following receipt of the CoP 1, BWW alleges it relied on the statements in the CoP 1 in executing the requisite Report of Sale and Affidavit of Fairness of Sale and Truth of Report on April 2, 2014.[6] *Id.* ¶ 11. Shortly thereafter, on April 4, 2014, the Trustees filed the Sale of Report and CoP 1 in the Foreclosure Action. *Id.* ¶ 12.

After Crowley filed exceptions to the Foreclosure Sale regarding the improper date of the legal notices, BWW contacted the Herald-Mail. *Id.* ¶ 14. On May 21, 2014, BWW claims that it contacted the Herald-Mail employee, Tina Sundergill, and was advised that the Herald-Mail would re-certify the publication dates. *Id.* ¶ 14. BWW received a second Certification of Publication ("CoP 2")[7] on May 23, 2014, which certified that the legal notices were published on February 25, 2014, March 4, 2014, and March 11, 2014. *Id.* ¶ 15. Following receipt of CoP 2, BWW filed the document in the Foreclosure Action on May 29, 2014. *Id.* at ¶ 16.

At an August 8, 2014 hearing in the Circuit Court for Washington County regarding the Foreclosure Action, BWW claims that Crowley asserted, for the first time, that the March 11, 2014 notice was not actually published on that date by the Herald-Mail. *Id.* ¶ 17. BWW asserts that it then independently investigated Crowley's allegation and confirmed that

---

[5] CoP 1 was executed by the Herald-Mail employee, Kimberly Tagg. *Id.* ¶ 10.
[6] The Report of Sale stated: "*inter alia,* that, to the best of his knowledge, information, and belief, that the Trustees had "given due notice of time, place, manner and terms of sale by advertisement in a newspaper published in Washington County, Maryland, once a week for at least three successive weeks before the day of sale, as will more fully appear by the printer's certificate to be filed herein . . ." *Id.* ¶ 11
[7] CoP 2 was executed by the Herald-Mail employee, Tina Sundergill. *Id.* ¶ 14.

the Herald-Mail did indeed fail to publish the legal notice on March 11, 2014. *Id.* ¶ 18. On May 27, 2015, BWW alleges that the Herald-Mail's President, Andy Bruns, admitted to and took responsibility for the failure to publish the March 11, 2014 notice through an e-mail exchange with Trustee and BWW employee, Jacob Geesing. *Id.* ¶ 20.

STANDARD OF REVIEW

**A.  Impleader Pursuant to Rule 14(a) of the Federal Rules of Civil Procedure**

Rule 14(a) of the Federal Rules of Civil Procedure governs the process by which a defendant may assert claims against parties not yet joined to the action. Specifically, Rule 14(a)(1) states that:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1). When a third-party claim has been improperly brought, "[a]ny party may move to strike [it]." Fed. R. Civ. P. 14(a)(4).

**B.  Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests

surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

DISCUSSION

In the subject Third-Party Complaint, BWW levies six claims against Third-Party Defendant the Herald-Mail: fraudulent misrepresentation (Counts I & II); breach of contract (Count III); negligent misrepresentation (Counts IV & V); and negligence (Count VI). As Maryland adheres to the doctrine of *lex loci contractus,* which applies the law of the place in which the contract was made, *American Motorists Ins. Co. v. ARTRA Group, Inc.*, 659 A.2d

1295, 1299-1300 (Md. 1995), and the doctrine of *lex loci delicti,* which applies the law of the state in which the alleged injury occurred, *Laboratory Corp. of America v. Hood,* 911 A.2d 841, 845 (Md. 2006), this Court will apply Maryland law to the contract and torts claims raised by BWW.[8]

The Herald-Mail asserts a variety of grounds on which the Third-Party Complaint should be dismissed. As a preliminary matter, however, this Court must first address whether BWW has satisfied the requirements for impleader under Rule 14(a). For those claims, if any, that survive this inquiry, this Court will then consider the Herald-Mail's arguments for dismissal.

### A. Impleader Pursuant to Rule 14(a)

Under Rule 14(a) of the Federal Rules of Civil Procedure, a defendant may, as a third-party plaintiff, bring suit against "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). In order to implead a third party under Rule 14(a), this Court has previously held that the third-party plaintiff's claim must be "derivative" of the plaintiff's claim. *L'Occitane, Inc. v. Tran Source Logistics, Inc.*, Civ. A. No. WMN-09-2499, 2010 WL 761201, at *3 (D. Md. Mar. 2, 2010) (quoting *Watergate Landmark Condominium Unit Owners' Assoc. v. Wiss, Janey, Elstner Assoc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987)). Such derivative liability usually arises in cases involving indemnification, joint tortfeasors, or contribution. *See L'Occitane*, 2010 WL 761201, at *3 ("Typically, proper third party claims involve one joint tortfeasor impleading another, an indemnitee impleading an indemnitor, or a secondarily liable party impleading one who is primarily liable[.]'" (quoting *Watergate*, 117

---

[8] This Court notes that federal jurisdiction is supported by Plaintiff Crowley's surviving claim against BWW under The Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*

F.R.D. at 578)); *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §
1446 (3d ed.) ("The secondary or derivative liability notion is central and thus impleader has
been successfully utilized when the basis of the third-party claim is indemnity, subrogation,
contribution, express or implied warranty, or some other theory." (footnotes omitted)).
Related claims—even those arising out of the same transaction or occurrence—do not
automatically satisfy the derivative requirement. *L'Occitane*, 2010 WL 761201, at *4. In
addition, a third-party complaint is not appropriate where a defendant merely attempts to
deflect blame onto another party:

> [A] third party claim is not appropriate where the defendant and
> putative third party say, in effect, "It was him, not me." Such a
> claim is viable only where a proposed third party plaintiff says,
> in effect, "If I am liable to plaintiff, then my liability is only
> technical or secondary or partial, and the third party defendant
> is derivatively liable and must reimburse me for all or part . . . of
> anything I must pay the plaintiff."

*Watergate*, 117 F.R.D. at 578.

In assessing third-party claims, the district court is afforded wide discretion. *See
L'Occitane*, 2010 WL 761201, at *5; *see also Johnson v. M.I. Windows and Doors, Inc.*, No. 2:11-cv-
167, 2012 WL 1015798, at *2 (D.S.C. Mar. 23, 2012). Relevant factors include the
introduction of unrelated issues or the undue complication of the original suit. *See L'Occitane*,
2010 WL 761201, at *5; *see also Johnson*, 2012 WL 1015798, at *2; *Hancock v. Chicago Title Ins.
Co.*, 263 F.R.D. 383, 393 (N.D. Tex. 2009), *aff'd sub nom. Benavides v. Chicago Title Ins. Co.*, 10-
10136, 2011 WL 1057567 (5th Cir. Mar. 23, 2011) ("In deciding a motion under Rule 14,
courts can consider the prejudice to the parties, complication of trial issues, likelihood of
delay, and timeliness.").

As noted *supra*, BWW's Third-Party Complaint raises six separate claims against the Herald-Mail: fraudulent misrepresentation (Counts I & II); breach of contract (Count III); negligent misrepresentation (Counts IV & V); and negligence (Count VI). Yet, Crowley's remaining claim concerns only the allegedly false and misleading affidavits contained in the Certifications of Publication and accompanying Report of Sale. In other words, she claims that BWW misrepresented that it had satisfied the foreclosure notice requirement. BWW's third-party claims against the Herald-Mail thus must be derivative of this claim to be proper under Rule 14(a).

BWW's claims for negligent misrepresentation meet this standard, as BWW contends that any misrepresentations on its part is due to the initial alleged misrepresentations by the Herald-Mail. BWW essentially claims that, if it is liable to Crowley under the FDCPA for filing false and misleading affidavits, then the Herald-Mail shares in that liability. On the other hand, BWW's claims for fraudulent misrepresentation, breach of contract, and negligence, while arising out of the same events, are not derivative of Crowley's remaining claim. Although the fraudulent misrepresentation claims also rest on the Herald-Mail's misrepresentations, the fraud inquiry is entirely separate and distinct from the core issue remaining—incorrectly certifying that the foreclosure notice was published on March 11, 2014. This claim simply raises no allegations of fraud. As it is Crowley's claim that controls under Rule 14(a), Counts I & II are not cognizable.

Similarly, the breach of contract claim stems from the Herald-Mail's failure to publish notice of the foreclosure on March 11, 2014 and subsequent false certification of publication. This action, however, concerns solely the false and misleading affidavits filed in

the foreclosure action. If BWW is liable to Crowley, the Herald-Mail does not share in that liability due to its breach of contract. Whether the Herald-Mail breached the contract is merely a separate inquiry stemming from the same underlying events. As such, Count III is not cognizable under Rule 14(a).

Finally, BWW's claim for negligence must also be dismissed. BWW alleges that the Herald-Mail owed a duty of care to BWW that it breached by failing to publish the foreclosure notice on March 11, 2015. Once again, this claim arises from the same events underlying this action, yet it does not derive from Crowley's remaining FDCPA claim. Only BWW's need for relief—as opposed to its right to recover—from the Herald-Mail will *automatically* arise if and when BWW is found liable to Crowley. *See Se. Mortg. Co. v. Mullins*, 514 F.2d 747, 750 (5th Cir. 1975) ("The common thread running through [cases where impleader was denied], and our own, is that the right or duty alleged to have been violated in the third party complaint does not emanate from the main claim but exists wholly independent of it. In each, the nexus with the principal action is not that it establishes the right to relief, but merely the need for relief."). The Herald-Mail may owe a duty of care to BWW to act in accordance with the contract, and it may have breached that duty, but that inquiry is not cognizable under Rule 14(a).

In sum, as the third-party claims of fraudulent misrepresentation, breach of contract, and negligence are not derivative of the underlying FDCPA claim, this Court need not reach the merits of the third-party claims in question. Counts I, II, III, & VI are simply not cognizable under Rule 14(a) and thus must be DISMISSED. As such, only the negligent misrepresentation claims of Counts IV and V remain.

**B. Negligent Misrepresentation (Counts IV & V)**

In Counts IV and V, BWW alleges that the Herald-Mail breached a duty of care when it issued false certification statements in CoP 1 and CoP 2. BWW relied on these misrepresentations when it filed CoP 1 and CoP 2 in the Foreclosure Action, actions that now serve as the basis for Crowley's FDCPA claim. The Herald-Mail argues for dismissal on several grounds: first, the Herald-Mail contends that BWW has failed to allege sufficient facts showing a tort duty independent of any contractual obligations; second, BWW has not shown reasonable reliance on any misrepresentations; and finally, the economic loss rule bars any claims sounding in negligence. Each argument will be addressed in turn.

To establish a claim for negligent misrepresentation under Maryland law, a plaintiff (or third-party plaintiff) must allege the following five elements:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
> (2) the defendant intends that his statement will be acted upon by the plaintiff;
> (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
> (4) the plaintiff, justifiably, takes action in reliance on the statement; and
> (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet v. Seney*, 439 A.2d 534, 539 (Md. 1982). In this case, only the first and fourth elements are at issue.

As noted *supra*, the Herald-Mail first contends that BWW has not alleged sufficient facts to satisfy the first element—that is, the existence of a duty of care owed by the Herald-Mail to BWW. In Maryland, "[a] contractual obligation, by itself, does not create a tort duty.

Instead, the duty giving rise to the tort action must be independent of the contractual obligation." *Mesmer v. Maryland Automobile Ins. Fund,* 725 A.2d 1053, 1058 (Md. 1999) (citing *Wilmington Trust Co. v. Clark*, 424 A.2d 744, 754 (Md. 1981) ("Mere failure to perform a contractual duty, without more, is not an actionable tort.")). The existence of an independent tort duty depends on "the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986). Where, as in this case, the harm is purely economic, there must be an "intimate nexus between the parties" to establish a tort duty of care. *Id.* at 759-60. Yet, "contractual privity or its equivalent" may satisfy this requirement. *Id.* at 759-60; *accord Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 803 (D. Md. 2013). On the other hand, the Maryland Court of Appeals has cautioned that the "mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Id.* at 759 (quoting *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961)). As this Court has previously explained, "this rule applies when the contracting parties are equally sophisticated, [although] there is an exception when the contractual relationship involves a 'vulnerable party.'" *MHD-Rockland, Inc. v. Aerospace Distribs. Inc.*, Civ. A. No. CCB-13-2442, 2014 WL 31677, at *3 (D. Md. Jan. 3, 2014) (citing *Lawyers Title Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 293-94 (4th Cir. 2002) (citing *Jacques*, 515 A.2d at 759)).

In this case, BWW has sufficiently alleged a duty independent of the Herald-Mail's contractual obligations.  Since the alleged harm is purely economic, BWW must show an "intimate nexus" between the parties. This Court first notes that the parties stand in

contractual privity, which may establish the requisite "intimate nexus." Yet, BWW need not rely on contractual privity alone. BWW, through its agent, Cooper Auctioneers, contracted with the Herald-Mail to publish a foreclosure notice on three separate occasions. The Herald-Mail, however, had a separate and independent duty to truthfully certify—that is, to use reasonable care—that it had indeed published the notices on the requested dates. The Herald-Mail allegedly breached this duty when it falsely certified that it had published the notice on March 11, 2014. BWW has thus sufficiently alleged a tort duty independent of its contractual obligations. *See 100 Investment Limited Partnership v. Columbia Town Center Title Co.*, 60 A.3d 1, 21 (Md. 2013) (citing *Corcoran v. Abstract & Title Co. of Md.*, 143 A.2d 808, 810 (Md. 1958) ("We emphasize the duty in tort is separate and independent of a contractual duty, and is a duty undertaken by the title examiner to use a reasonable degree of skill and diligence in conducting the title search and issuing the commitment.")).

The Herald-Mail next argues that, since the foreclosure of the Property occurred before BWW filed either CoP 1 or CoP 2, BWW did not reasonably rely on the Herald-Mail's misrepresentations. The Herald-Mail's argument, however, rests on the incorrect assumption that the harm alleged by Crowley is the foreclosure of the Property. That harm is not the focus of this action. Rather, Crowley seeks to recover on the filing of false and misleading affidavits in the Foreclosure Action. BWW specifically alleges that it relied on the Herald-Mail's misrepresentations in CoP 1 and CoP 2 when filing the affidavits in question. Moreover, BWW has also sufficiently alleged that its reliance was reasonable. BWW alleges, *inter alia*, that it had worked with the Herald-Mail for over eighteen years, during which time no issues had arisen that would necessitate independent verification of publication. Third-

Party Compl. ¶¶ 55-56. The Herald-Mail is certainly free to dispute the reasonableness of BWW's reliance, but that inquiry must be reserved for the trier of fact. At this early stage in the proceedings, BWW has sufficiently alleged that it reasonably relied on the Herald-Mail's misrepresentations.

Finally, the Herald-Mail argues that the economic loss rule forecloses any claims sounding in negligence. Generally, Maryland does not permit recovery in tort for purely economic losses. *See, e.g.*, *U.S. Gypsum Co. v. Mayor & City Council of Baltimore*, 647 A.2d 405, 410 (Md. 1994). Where the alleged tortfeasor is under a duty of care independent of any contractual obligations, however, the economic loss rule does not bar recovery. *Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1068-69 (Md. Ct. Spec. App. 2002); *see also Brack v. Evans*, 187 A.2d 880 (Md. 1963) (permitting recovery under a negligent misrepresentation theory where losses were economic only); *accord Martens Chevrolet*, 439 A.2d at 536 (Md. 1982). In other words, if a plaintiff satisfies the "intimate nexus" test, then the economic loss rule does not apply. *Cooper*, 810 A.2d at 1070-71. As discussed *supra*, BWW satisfied the "intimate nexus" test by alleging contractual privity *and* a duty of care independent of any contractual obligations. The economic loss rule is thus inapplicable to the claims for negligent misrepresentation. Accordingly, Counts IV and V will proceed.

CONCLUSION

For the reasons stated above, Third-Party Defendant Herald-Mail's Motion to Dismiss (ECF No. 29) Third-Party Defendant Herald-Mail's Motion to Dismiss the Third-Party Complaint (ECF No. 29) is GRANTED IN PART and DENIED IN PART. In sum, Counts I, II, III, and VI are not cognizable under Rule 14(a) of the Federal Rules of Civil

Procedure. Counts IV and V, however, are cognizable under Rule 14(a) and sufficiently pled.

Accordingly, the Motion to Dismiss the Third-Party Complaint is GRANTED as to Counts I, II, III, and VI, and DENIED as to Counts IV and V.

        A separate Order follows.

Dated:        September 6, 2016

                                      \_\_\_\_\_/s/_____
                                        Richard D. Bennett
                                        United States District Judge